14-1802, Apple v. Samsung. Give everybody a chance to settle in. May it please the Court, my name is Bill Lee and together with my partner Richard O'Neill, I represent Apple. Samsung contented its brief that this case presents the same facts and the same issues that this Court has already found insufficient as the basis for permanent injunctive relief. We suggest that is not the case. There are similarities, but there are fundamental differences. And is the main difference you're calling out the fact that the injunction here was limited? Your Honor, there are actually three differences that I think are key. That is one of them. The injunction is feature-based, and I think that that is a critical distinction. The second distinction is this. The Samsung represented at this trial that the features of these three patents were easily severable. Designed aroundable during a day. In the prior cases, there were patents... Designed around, did you say a day or was it a month? It was a day. Actually, Your Honor, what happened is during the course of the testimony, they elicited testimony that it could be designed around in a day. In one of the arguments, they said if it's a day, the most it would be would be 30. So we went back to the District Court and asked for the feature-based injunction. We also asked, consistent with the Emulex case and the Qualcomm cases here, for the longest design-around period that they had suggested. And as the District Court noted in her opinion, they haven't contested that period. They haven't suggested it's insufficient, that it couldn't be designed around. And to be clear, Your Honor, we are not asking for an injunction that would reach phones in the hands of customers or third parties. This goes to Samsung. Now, these are all three software patents. There could be a software update issued, and in a matter of minutes, these features could be removed. And the phones could continue to operate with all the other features without any interference at all. I'm sorry, you had another point. Your Honor, I think it's the three. If I get to the third quickly, and I'll come back to your question. It's the fact that it's feature-based, not product-based. And at some point, I'd like to come back to how that's consistent with the court's law in the entire market value area. The second is, there is a design-around period that's not contested that is easily achievable. And the third is, we have raised the reputational injury argument that had not been present in Apple III. Okay, leaving the reputational part. On the other part, it just seems to me that there is, as you know well, that in eBay, there are several components. And we've got the irreparable harm, which is typically our focus, which encompasses the causal nexus, which is most of the discussion here. But it seems to me, the narrowness of the injunction, the limited period it would take to design around, all that seems to me to go to the, I think it's the third factor in eBay, which is the relative harm to the party. All of those arguments persuade me that it would not be a dramatic or drastic hardship on Samsung if an injunction were imposed. But I'm not sure how that necessarily gets to the nub of the question before us, where this case was decided, was on irreparable harm, including the causal nexus. Your Honor, I think that is a core point because I have both a legal answer and an answer specific to this case. The legal answer is that analytically, there is no reason the scope of the injunction should be relevant to two of the eBay factors and not to the other two. And here's the reason why. When this court articulated in Apple II the reason for the causal nexus requirement, you said that it had two portions of the test. The first portion of the test is, if no injunction is granted, will there be irreparable harm? The second then is, if there will be that irreparable harm, is there a causal nexus to the infringement? But if I focus on the first part of that test, Your Honor, which is if an injunction is not granted, will there be irreparable harm? The irreparable harm is defined by the injunction you're requesting. But the irreparable harm is the irreparable harm to the patentee. And Your Honor, there's different types of irreparable harm. You're right, for sure. But in Apple III, the irreparable harm that we identified were sales and downstream market share. Here, the irreparable harm, setting aside reputational injury, because reputational injury ties very closely to it specifically. Here, in the injunction we're requesting, the harm is the continued use of our inventions by a competitor when those inventions are immediately severable and they could continue to sell their products. And you're right, the first irreparable harm is to define the harm to the patentee. But if we had asked for it to take our cup holder analogy that we've had before... It's going on for years. It's going to live forever. But if the injunction you had requested was for the whole car, that is different than an injunction that was to the back seat or to the cup holder. It's the harm that you're trying to... But in the cup holder analogy, if the injunction there... And I'm not sure in the other Apple cases we ever talked about the scope of the injunction one way or another as affecting what we were doing. But if you have an injunction, if you were seeking an injunction exclusively on the cup holder, would you not still have to show irreparable harm and that monetary damages were not sufficient? Your Honor, you would have to show irreparable harm and the scope of that irreparable harm would be defined by the injunction that you're requesting. And this is key. Well, you say the scope... Give me more on that because I don't understand it. Yeah, the scope of the harm is affected by... The scope of the injunction informs the irreparable harm. But as a practical matter, how so? Either in your case or in the cup holder? Your Honor, I think in our case specifically, when considering the third eBay factor, the district court did much more than just consider the harm to Samsung. She explicitly found that we are suffering substantial harm by having to compete against a competitor's product with our own invention in it. That is substantial harm, which this court has found to be irreparable harm. That is what's defined by the scope of the injunction. Your Honor, if I could go to the analogy... Isn't the scope of the injunction important because, as the Supreme Court has instructed us in the case of Oregon, that an injunction is forward-looking, not backward-looking, and it's to address harm that's likely to occur. And by limiting it to the three features, then you're limiting the scope, and that goes to define irreparable harm. Your Honor, we agree. We think there is no analytical reason that the scope of the injunction wouldn't educate all four factors. And two points. To go to the legal portion, Your Honor, in Apple II, this court discussed the difference between feature-based injunctions and product-based injunctions. That discussion was in the irreparable harm section of the opinion, and we think it belongs there just for this reason. The second is when Chief Justice Roberts issued his concurrence in eBay and talked about things like maintaining exclusivity, not over products broadly, but over your invention, he specifically says that that exclusivity that, Judge Reina, you have just referred to is relevant to the first two factors. But, so, you know, I mean, look, my heart's with you. I think eBay is wrongly decided by the Supreme Court. On record, there you go. I think it's wrong. I think patentees should get injunctions. But there is something to the idea that we've got this body of precedent now that requires causal nexus, and I really don't understand your argument about irreparable harm in the form of a limited injunction. I do think that Judge Post's, the question she asked you, kind of goes to the heart of what I'm troubled by, which is that the nature of the narrow limit of the injunction quite clearly goes to the hardship, but I don't see how that goes to Apple's irreparable harm. Your Honor, let me say two responses. The first is this. There are different types of harm that can be alleged to be irreparable. One can be sales-based downstream market share. One can be reputational. One can be, and both this Court and the Supreme Court have said, it's continued use of the feature. Now, we're not saying that... No, wait, how? Because if I accept that as de facto, which, by the way, I didn't understand that to be your argument below or before us, but maybe you'll show me why I missed it somehow. I understood your argument to be reputational and lost sales of downstream products, but even if you're somehow right, why wouldn't that guarantee injunction in every competitor case, period, or automatically at least guarantee irreparable harm any time there's a competitor scenario? And, Your Honor, that can answer the first question, but let me answer that first. We're not saying that... Samsung has suggested we've asked for a category overrule. I think this is a critical point in the argument because the question before the Court is, who's urging the categorical rule? No, I still think stupid labels. They're irrelevant to me. What I want to know is how can you say Apple will be irreparably harmed and that that alone, push aside reputation or lost sales, satisfies the irreparable harm inquiry by a competitor continuing to sell, and how does that not create a per se rule? Well, Your Honor, whether it's categorical or per se, it doesn't create a per se rule because what we're saying to you is this. In this situation, where we have asked for a feature-based injunction, with a design around the period they concede is sufficient, where it's... How does that have anything to do with Apple's irreparable harm? Your Honor, if you look at Apple II, the panel in Apple II said there's a difference between a feature-based and a product-based injunction. And a feature-based injunction... But they didn't say that you don't have to show irreparable harm to the patentee if you have a feature-based injunction. No, and... So where is the irreparable harm? The irreparable harm is specific. It's what Joe Terrania said. It is two things. Setting aside reputation, I guess. And even... I want to let you finish. I'm sorry. But I can't help myself. So even though you're saying it's not a per se rule, I don't see how that rule would even apply in this case where you've licensed to each... Am I allowed to say who you've licensed to? Well, Your Honor, there are four licenses... I'm not going to say the amounts of the licenses or anything else. But it's basically every Apple competitor except for Samsung. I understand why you guys hate each other and fight over everything. But you've licensed to every single other... I mean, my law clerk tonight sat around the table yesterday trying to come up with a possible cell phone that exists that you didn't license to. I don't mean products. I mean currently available cell phones. You've already licensed these patents up the wazoo. So why in the world would it be irreparable harm to Apple? I know you compete with Samsung, but you also compete with HTC and each of the other three licenses. So given that you compete, why would it be irreparable harm to Apple in this case even if I were to say in general... Let me answer that question and then come back to Ginger Post a question if I could because I think I have four or five questions on the table right now. We apologize. The answer to Your Honor's question... I'm just saying it's got another one coming down the pipe. If I could answer the two because I'm at that point... Okay, start with mine. I'm old enough. I can't remember the first one. So the answer to your question is in Apple III. The same four licenses were considered. One of them is to someone who doesn't compete at the end. Two of them were litigation-induced. Two of them include anti-cloning provisions. One of them is a standstill. Those licenses don't accomplish what you just said. We have not licensed every competitor. And in fact, if you go to... Who did you license? There's only four licenses before the court. That's all there is in the record. The people you've licensed to in combination with Apple, excluding Samsung, represent, if you include Samsung, the entire universe of product sales. I mean, maybe there's a .00001 somewhere because there's some crazy individual company that's making their own phones. But you're talking about a limited universe of sellers. Your Honor, especially, I don't think that's the record. And if you look at the judge's findings, she actually found, when she got to the third and fourth factors, that we try to maintain exclusivity. There were litigations, but there are... She said you try to maintain exclusivity in general. She didn't say with regard to these patents. With regard to these patents, you've licensed them to four competitors. And, Your Honor, each of those four licenses, which are the only ones in the record before you, were specifically distinguished in Apple III. They weren't sufficient to reach the conclusion they reached. If I could return to Judge Crow's question, but I think it in part answers Judge Moore's question. If I do an analogy between the entire market value for damages and apportionment, I think it analytically helps answer your question. If you're going to invoke the entire market value rule and you have a feature that is a portion of a multi-feature product, you have to show that demand for that product is driven by patented feature. If you're seeking an injunction on the entire product, the cost of nexus requirements is you need to show that that feature drives demand for the entire product. But, what if you apportion? And what Erickson and Burnett tells us is if you're not seeking the entire market value, you don't have to show your driving demand for the whole product if you apportion. And a feature based... So you're saying, I mean, I agree, but we all know, obviously, the entire market value rule comes up with a whole lot of cases in the theory that involves damages. But is it your view that because that's the way things go down in assessing the viability of the entire market value rule that we should apply that same rule to causal nexus? So if we are going down to certain features, we eliminate the causal nexus requirement? No, we're not suggesting that, either as to Douglas Dynamics or as to... My real question, if you could just take a minute, is that leaving causal nexus aside, I'm really on irreparable harm. I'm having a hard time getting past irreparable harm. So I think the question on the table may have been what is the irreparable harm to Apple with regard to these features and how is that necessarily affected? Is it greater or less irreparable harm if it's an injunction on the features versus an injunction on the whole product? And you want two parts to the answer, which I'll do quickly because I've actually used my rebuttal time. But let me give both because I think that they are critically important. The irreparable harm in not granting a feature-based injunction is that Apple has to compete with a competitor who is continuing to use those features even though those features are immediately severable. And in the 647 patent, even though they said they would design around it in a day, they're still here 10 months later. So the answer, if I could translate that into English. So the irreparable harm is they could have fixed it and it's easy for them to fix it and they're not doing it. No, no, I would say it differently, Ron. And this is actually, if you look at the judges, if you look at the Bosch opinion where this court talked about the harm from competing against a competitor who is using your patent and invention. The district court judge here specifically found that we're suffering that harm. That harm, in addition to the reputational injury, is irreparable. And I know that Judge Moore has cautioned me against labels, but let me just finish with this thought. In this case, and I'm not going to use a label. I may have not... I forgot to come back to Judge Ranney's last question. Exactly. In this context, competitor to competitor, an effort to maintain exclusivity, evidence of copying, 35 million acts of infringement, continued use of a feature, a feature that could be designed around in a day. If the injunction we've requested is not appropriate, then there's no injunctive relief available. And the one thing for all the briefings that this court has seen in Apple I, Apple II, Apple III, you will look in vain for any suggestion by Samsung that there's any kind of injunction that's available. That is the type of categorical rule both this court and the Supreme Court has contended. And as we finish the argument, that's the question I would leave the court with. Well, I guess, I don't want to... Hold on, let me answer your question, since you're going to public one to me. The answer is, in a scenario where you didn't already license the patents to other people, maybe you're right, because then you've established exclusivity rights and that those exclusivity rights are important based on your own personal performance. So there are factors. You think that if we go against you, we've adopted some categorical rule, and I don't see it that way. I don't see this as a poster child case for that. Well, Your Honor, we would respectfully disagree. On this issue of the licensing, I would just urge this. This record on the licensing is identical. To what you addressed in Apple III. And I think if the court addresses it consistently, then the question that we pose is a fair question. The other thing I just... I'm not answering your questions. But I'd also put on, in addition to the licenses which may distinguish it, in this case, there were explicit and detailed findings by the district court with regard to whether or not to the actual harm to Apple, including its reputation, by the sale of these products. And there were findings made, and she rejected some of your testimony and some of your evidence with regard to those findings. So I don't think... I think you paint a rule, but I don't think this rule is going to... I mean, in an instance where there was evidence and there were findings, which we have to defer to the district court based on reputational harm, I think the case might be otherwise. Right. Your Honor, two quick answers to that question, and then I'll cede the floor. The first is, for the first three, seven pages of her opinion, the question of the scope of injunction never comes up. It is written identically to a request for a product-based injunction, which is not what we've asked for. Yeah, but the reputational harm, frankly, would be more if it were... I mean, why does the reputational harm, if you're just dealing with these features... Well, Your Honor, I would draw your attention to A14 and 15, and what the district court judge did there is she imposed this product-based feature, a product-based injunction, causal nexus requirement on Douglas Dynamics. And there's no basis to do that. The key here, Your Honor, this is an abuse of discretion standard. We don't contend otherwise. A legal error is an abuse of discretion. The issue, which this court has not addressed before, is twofold. For a feature-based injunction with a specific sunset period, do you have to prove, which is what she required us to prove, that the feature drives sales for the product? The answer to that should be no. For application of Douglas Dynamics, which is a reputational injury because... Hold on. Let me stop. But I think that the more difficult question is what is the causal nexus then? I'm sympathetic to the idea that your injunction is narrow. So if you don't think you need to prove causal nexus that these features drive demands and sales of the whole product, what is the causal nexus requirement that you believe is incumbent on you? I think it's a two-part causal nexus requirement that's articulated in Apple II. And I may take the parts. I'll fill in how we satisfy it. First part is, if the injunction requested is not granted, what's the harm? Continued use of the feature is the harm. How does that... We're talking harm to Samsung, not harm to Apple. No, no, harm to Apple. The causal nexus requirement is, what is the harm to Apple? Exactly, no. I thought you were saying, though, that you're referring to the fact because of the narrowness of the injunction, there's little harm. We're valuing... Not only that, it's what's the harm to Apple in the future? Right. Not the past. Right. This is Judge Rainey, and I hope I answered it fairly and correctly. The answer is having to compete against a product with your feature in the future is irreparable harm. Bosch says that. In fact, Apple III... To what extent should we give weight, let's say, to a situation where you have a jury verdict of infringement?  and the question is the likelihood of irreparable harm in the future. But we already have a verdict of infringement, a jury verdict, taboo. To what extent does the right to exclude come in here? I don't see a lot written on that particular issue, but it seems to me that the most basic intrusion any time you have an infringement has been on the penalty's right to exclude. And that, in my mind, must carry some weight. What weight, if any, do you think we should give that? Your Honor, in this context, it should carry a lot. And this actually is where Douglas Dynamics and Chief Justice Roberts' concurrency evades the high end of what we're saying. With a jury verdict on three patents of not invalid and infringed, and as one of these, continued use months after the jury verdict, this goes close to my effort to articulate irreparable harm. The continued use of a product with our patented feature that has been adjudicated to infringe compromises our exclusivity. In fact, it eliminates our exclusivity. And that is irreparable harm. That's the predicate of Douglas Dynamics. You already eliminated your own exclusivity when you licensed. I'm not against you on the big point you're arguing, that it is a potential form of irreparable harm to force someone who has valued and established their exclusivity to then share it. I'm not against you that there are scenarios in which that is true, but how is that true here in light of the licenses? Your Honor, there are two critical things. The first is, there is no evidence in the record that anybody is using these three features other than SAMHSA. None of the licenses... Is Apple using them? Isn't there evidence that at least one of the features is being used by Apple? No, no. Other than us. Other than us. As to Apple, there is evidence of two of the three. You're basically asking for a presumption. There should be a presumption, which unfortunately makes me nervous because we went down that road and got smacked already, but there should be a presumption of irreparable harm that stems from forcing a patentee to allow his competitor to sell a product with his patented feature. That's basically what you're asking for. It's not, Your Honor, and that's why... But you said it should automatically establish irreparable harm. I didn't say that, Your Honor, and I want to be very clear. We have a specific set of facts here. And I want to... I know I'm way over my time, so there are two keys here that I think... three keys, and I'll go through them very quickly. The first is that however you think it's correct to analyze the feature-based injunction, the one thing we can agree on is the district court for both the... for all the eBay factors and for Douglas Dynamics analyzed it as if we had to prove these features drove demand for the product. That was a legal error. The second is this. But you've never told me what's a substitute inquiry, and I've asked you a billion times. What is the right inquiry if that's wrong? Because I might agree with you that it's wrong, but I don't know what it needs to be replaced with, and you still do have to establish irreparable harm. And, Your Honor, the irreparable... Let me finish the two, because, Your Honor, in Apple III, the same licenses... If Your Honor were correct that those three licenses demonstrated we would freely license anybody, there never would have been a remand in Apple III. No, I didn't say they demonstrate you'd freely license everyone. I said they demonstrate that your exclusivity is something you already gave away. And then, Your Honor, Apple III would have been decided differently because that would have been the end of Apple III. No, it wouldn't have been because they had to address the other issues you raised, which had not been previously addressed on the irreparable harm point. But, anyway, I don't want to argue... She had... The district court had denied an injunction in Apple III. So, if that were correct, that would be... That would be... Apple III would have come out differently. And... One more... You finished the record?  that we've licensed everybody. Motorola's out there. LG's out there. There's a whole bunch of folks. There's a reason that Apple III resulted in those unlicensed people. Okay, thank you. We'll restore it in three minutes with a rebuttal. And we're ten minutes ahead plus three minutes. So, why don't we give... If you need it, only if you need it, we'll add 12 minutes to your time. But, really, don't feel compelled in the absence... Certainly not in the absence of questions. Use all of that time. Thank you, Your Honor. May it please the Court. Kathleen Sullivan for Samsung. The district court here did not abuse her discretion in denying a permanent injunction for the reasons the colloquy has already shown. The district court meticulously applied the causal nexus standard for the irreparable harm inquiry that's been well established in the prior decisions in this line of cases. And, as you observed, Your Honor... What I don't understand is why would the causal nexus, namely, that demand... Did she require that demand for the patented product had to be established? Did she require that these features drove demand for the patent products had to be established in order to assess reputational injury to Apple? Yes. She applied causal nexus to both. And she found a... Why? Why is that the right test for reputational injury? Because it's the test for all harm. Causal nexus to the harm that justifies the extraordinary relief of injunction. Correct. And the extraordinary relief they're seeking is a feature-specific form of relief. And so why wouldn't the causal nexus have to do with is their reputation harmed by someone else's uses of these features? Why isn't that precisely and exactly the right causal nexus inquiry? Well, the causal nexus inquiry is whether the harm that's irreparable has been caused by infringement of the specific features. And what she found... Well, if they could have... I mean, if they had shown... If we had a record here where they took these three features and they had unassailable conclusive testimony that the use of these three features is what the essence of Apple's reputation in the marketplace, then I think that would have all been satisfied, right? That would be an entirely different case. There's a factual finding here that there was no causal nexus to reputational harm in this case. There's also a factual finding here... No, that causal nexus was based on the predicate idea that they had to establish something based on the sale of the whole product. Correct, Your Honor. And that's why I don't understand it. Correct, Your Honor. But let me go back and say why the scope of the injunction does not have any bearing on the irreparable harm inquiry whatsoever. It has no bearing either on the adequacy of monetary damage. Wait a minute. You have to say it has no bearing. It has bearing on the causal nexus, does it not? What am I asking you not to be able to do anymore? So isn't that relevant to whether or not there's a causal nexus between that and the harm to Apple? Let me go back, if I may, to cupholders. Mr. Lee, my friend Mr. Lee, said, well, we should get an injunction for the cupholder if they are still using it when they could have designed around. That's not correct. If the cupholder didn't drive consumer demand for the car, then there would be no entitlement to an injunction. You could get damages for the cupholder unless, remember, that there is a jury judgment of damages. We're contesting it. We'll file our merits appeal later today. But the point is that you don't get an injunction unless the feature is what drove consumer demand for the product. And that's as true for a claim of harm to reputation. Can't you make the analogy that that's what's happened here? Or by their seeking a feature-based injunction. They're limiting the injunction to the infringing features. Just a brief... And that's somewhat what we ask in the area of damages and laser dynamics and these other cases. I hear you, Your Honor, but there's no apportionment requirement when we get to injunctions. It's a different world. An injunction...  a weighing of interest. And this is a... Correct, Your Honor. Right. So this is an exercise in equity that we're conducting. Correct, Your Honor. But let me go back to irreparable harm and try to explain why I think the feature-based nature of the patent... of the injunction does not bear on irreparable harm. By the way, this is wordsmithing. This is semantic sleight of hand. The fact that the feature is enjoined is going to mean that our products are enjoined because we don't make features, we make products. What about your opponent's argument that there's evidence in the record that shows that Samson could address the problem in one day, one to 30 days, and it's... boom, it's gone? Well, Your Honor, we have designed around all of the accused features, all of them, and we have... we're never even selling products accused of infringing 721 and 172, even at the time of trial. Those products were off the market at the time of trial. So the only products that remain to be enjoined in the future are those that allegedly infringe the 647. We vigorously contest that there is any infringement of a valid 647 claim, but even if there were, there's only one product left on the market, the GS3, that even infringes that patent. So, Your Honor, if we're just going to go straight to equities, the equities tip in favor of Samson, because we've designed around everything, we're not selling the infringing products, and... Are you able to design around the remaining product that's subject to... We have already, Your Honor. We have already. So the... Apple does not need an injunction to stop ongoing infringement. Your Honor... Why are you fighting it?  I don't understand. If you're telling me you've designed around everything, then why am I wasting my time trying to figure out whether they should have gotten an injunction or not, when you're saying it doesn't affect Samsung at all if you give them one? It affects us... So give it to them. No, Your Honor, because I would like to respectfully refer you to the appendix at page 5008 and 5009. I may not have had enough zeros. 50008-09. That's the letter to Sprint. We've been here before, Your Honor. And the last time when there was a brief-lived preliminary injunction, Apple went out to our customers and carriers. Sprint is the letter that's in the record at those pages. 50008-09. And it threatened them with contempt if they sold our product. We're here because Apple... If Apple gets an injunction, we have the fear, uncertainty, and doubt that's leveled on our customers and our retailers for... which will leverage Apple's control far beyond the legitimate reach of their patent because it will stop unaccused features and unaccused products to the extent our customers and retailers are scared. They sowed plenty of fear, uncertainty, doubt last time until this court lifted that injunction. I'm sorry, Your Honor. Isn't that what makes this case special in a way? I mean, we're looking at a situation where there's a feature-based injunction. And all the other injunctions that I've sat on in this court have not been feature-based. They've addressed the entire device. You're right, Your Honor. But I respectfully suggest that you should not accept that that change in wordsmithing of the scope of the injunction makes any difference to the causal nexus analysis. Let me just try to say very simply why. An injunction act... It's not just wordsmithing. I mean, it goes to actually shape the injunction. It has legal effect. It's not just wordsmithing. Well, Your Honor, with respect, we think that where we only... We're not selling a software feature. We're selling phones. So if you tell us we're enjoining the feature, you're in effect enjoining our phone. So not necessarily where you can design around it immediately. Correct, Your Honor. But then, Your Honor, the answer is we pay them. We pay them the adjudicated damages. And remember, the district court did issue... Well, you pay them the damages for the ones you sold before. We're talking about whether you're allowed to keep doing it. But, Your Honor, we're not doing it. We have designed around. We're not doing it. And we will pay a steep price if Apple's belated request for ongoing royalties, which was granted by the court below, survives appeal. We'll contest it on appeal. We don't think it was a correct order. We don't think there's underlying infringement. We'll contest all of that. But if the ongoing royalties for any continuing infringement is a form of equitable relief, that would say that we don't... If the ongoing infringement is not a form of equitable relief, it's a compensatory relief. Well, Your Honor, it's a compensatory form of... It's a compensatory form of relief. But, Your Honor, we've already explored and you've already revealed why this case is one in which there's adequacy of monetary damages. This is a case in which Apple gave up exclusivity by offering to license to Samsung in August of 2010 and by licensing its own competitors in the smartphone market. Mr. Lee's distinctions about the nature of the licenses or... It doesn't even disclaim the patent. I mean, they still own the patent and the fact that they've chosen to license it selectively here and there, that doesn't do away with their entire right of exclusivity. Well, Your Honor, I think with respect, if you're willing to license your patent, it shows that you're willing to take money for it rather than to maintain exclusive ownership. Except perhaps from your competitor when you have a market where you've only got two competitors. Well, let's go back to irreparable harm if I could, Your Honor, and I'd like to call your attention to the finding of the district court on page A-20 where the district court held with respect to the licenses, and now I'm back on irreparable harm, not monetary compensation, A-20 at line 16, that after affording due consideration to the circumstances around Apple's licenses, those licenses nevertheless suggest that Apple's reputation as an innovator among consumers will not be irreparably harmed without an injunction. If I'm willing to license this to other people, it can't be that my reputation turns on those exact features. And by the way, Your Honor, Apple... You can't make categorical statements. In this case, it can't be because she also found Samsung is not recognized as some sort of negative or derogatory producer. There are circumstances where they might license to good, legitimate businesses, and then if a competitor comes along that's going to not represent their product well in the market, which is not this case. That is correct, Your Honor. That is correct. You've got to be more careful and not be in such a per se fashion. Accepted, Your Honor. And I don't mean to suggest for a moment that we're suggesting that any license automatically ends the question. But I do want to come back to the fact that the district court did make meticulous factual findings here. She took the learning that this court has provided in Apple I, II, and III. She went and she weighed the record very carefully. Did she take the learning or did she feel strong arms? Your Honor, I believe it is the duty of the district court to follow this court's well-established precedent. And she did so exactly. I look at how she addressed her precedent. It seems to me that what she's done and we're talking about not setting some rules in the future, but it may be that she already established some rules. And one of them is that in a patent infringement case,    past behavior and you leave it at that. You're not looking to see what conduct or what behavior was done in the past and you leave it at that. You're not looking at what behavior we had in the past and then trying to determine whether there's a likelihood, whether it's likely that this conduct will be repeated in the future. And so injunctions are forward-looking and it seems to me that the district court kept it backward-looking. But Your Honor, it's not just forward-looking. It's forward-looking with a couple of very important conditions. One, the infringement of the specific features has to be the reason for the irreparable harm and there has to have been irreparable harm. Let's start with the second one first. The district court found a meticulous factual finding that there was no irreparable harm. First, the district court found that there was no... Before you go on, I just want to point out Oregon State Medical, United States versus Oregon State Medical, the Supreme Court says that the sole function of an action for an injunction is to forestall future violations. That's correct, Your Honor, but not all violations. Obviously, if there's no irreparable harm that can't be compensated by monetary damages, even if it happens... But if there's a showing of infringement already, there's a jury verdict of infringement. Correct, Your Honor. And it's limited and the verdict is limited to three features. You have now a preliminary injunction that is limited in scope to those three features. Why is that preliminary injunction not forward-looking such as expressed by the Supreme Court? It is forward-looking, but that's not enough. It's got to be forward-looking with respect, A, to irreparable harm. There's no irreparable harm here because the district court correctly found that the harm here was adequately compensated by monetary damages. And, second, the irreparable harm has to be caused by the infringement. I think we've said that the damages goes to the harm already caused. Yes. Right. Correct, Your Honor. But there's an ongoing royalty that's contemplated here. Correct, Your Honor. In this injunction, there's an ongoing royalty right to compensate... Correct, Your Honor. The district court has already adjudicated that. Apple, in an unprecedented fashion, asked for the ongoing royalties belatedly after it had already taken its injunction appeal here. But not... Just abstractly, the question of how you deal with future conduct is, one, you have the deterrent effect from the Basque infringement verdict. Number two, ongoing royalties are a potential form of compensation for future infringement if there is any. There isn't in this case because we've designed around. And the reason Apple is here asking for an injunction, as Mr. Leake discussed candidly in prior arguments before this court, is that Apple doesn't think it should have to file new patent suits in the future. It wants to use the contempt power of the court in enforcing an injunction to forego the filing of new, specific, patent claims based on new, specific features. And the letter to Sprint demonstrates that tactic and this court shouldn't afford it any leeway. But, Your Honor, I just want to go back to why the scope of the injunction shouldn't change your causal nexus requirements in any way. Irreparable harm asks about the harm in the absence of the injunction. How the injunction is worded can't have any effect on whether there's irreparable harm or not. The proper question is, did infringement of these three features cause the irreparable harm? Remember, Apple can be losing market share because Samsung has the better product, the newer form factors, the new, new thing, the thing that caused Mr. Schiller and Apple to have to revamp their advertising campaign. And if Samsung is selling more phones and Apple is losing market share, Apple is losing market share because of its legitimate non-infringing activity. That's not irreparable harm to Apple that was caused by infringement of the claimed features. So causal nexus is a prerequisite before we get to the question of scope. Before we ever get to the question of scope, there has to be a showing that there was irreparable harm, can't be compensated by money. Here the willingness to take a license shows that there was a willingness to take money as a form of compensation. And the district court also correctly found that monetary compensation was capable of remedying this infringement. And there's no showing that these features drove demand for the product. Now... What was the finding on reputational harm and causation? The finding on reputational harm and causation was that... evidence does not indicate that Apple's reputation suffered as a result of Samsung's infringement. That's at A15. And that's upon review of a battle of the... you know, a classic battle of the evidence. It's a resolution of factual findings. Now remember, Apple never brought up reputation at trials. Its experts didn't try to prove loss of goodwill. It's a totally post-trial, post-hoc invention on Apple's part where Apple comes in and they try to cherry-pick a few statements from their own fact witnesses' testimony and say, look, harm to our reputation. The district court goes through that evidence meticulously. Just think with me about how to state the law correctly. It's probably not possible for you, but divorce it from your advocacy in favor of Samsung. Because I just want to make sure we get this law right. Yes, Your Honor. I feel like maybe you're right about the causal nexus requirement being tied to the whole product and the demand for the product when the form of irreparable harm being sought is lost to him. Because it's the sale of the whole product. So we're on the same page so far, right? Correct, Your Honor. Okay. But if the issue is reputational, and the judge posed that question at the beginning and said, well, what if these key features were sort of Apple's trademark? This is what they were known for. This is sort of really significant to their brand name and their reputation in the industry. They wouldn't then need to prove that those key features drove sales, right? It would be enough for them to be able to show that your use of those features was affecting their reputation regardless of needing to establish a causal nexus that somehow links the features to sales or demand for the phone itself, right? I don't agree with this. Let me go back, Your Honor. I don't agree with respect. I think that the correct statement of the law for any form of irreparable injury should be that causal nexus to that injury is required. And in a situation like this, injury from the sales. Douglas Dynamics is your case, Your Honor. Douglas Dynamics is a case in which it's more of a simple product patent and in which the patent is the product, essentially. The detachable snowplow assembly that's claimed in the patent is the competing producer's product. So there's a convergence between the patent and the product and in that case, you would have to show a causal nexus. It wasn't discussed in that case, but it was assumed that there was a causal nexus between the infringement and the sale, the harm from lost sales, because the patent was the product. In a complex product like a smartphone, you can't presume that any minor feature is going to be driving demand for the product. I think you're pushing back too hard. I know. You don't need this to win. Judge Moore's hypothetical dealt with what if it's something that really is the heart, the essence of the reputation of a company and you're a competitor. And if that's the feature we're talking about, the infringing feature, goes to the heart. Well, I would think there's at least a case to be made based on the facts and the records that that was enough of a hit on reputation and even if it's the heart of their feature and what they do, there's probably a causal nexus established. Your Honor, that's my question. If there were empirical evidence that reputation was harmed apart from an adverse effect on sales and there was none here, what would you do? Then perhaps reputational injury could be shown without a causal nexus to lost sales. I think that's a very improbable hypothetical because if the features, and the features are minor features, nobody ever advertised them. Samsung doesn't advertise these features. Apple didn't depend on these features. There's unrebutted evidence that these features were minor. This is the antenna. You don't need empirical evidence to show harm of a feature, correct? Well, Your Honor, we don't accept that this court has ever blessed speculative feature harm. There would have to be circumstances. You can do a circumstance. It's not just empirical evidence that you need in order to show harm of a feature. Well, Your Honor, I believe you do have to show some real basis, real world basis. A basis, yes, but not data, not empirical. Absolutely, Your Honor. A real world basis shown by any form of evidence. But the key thing I want to say is just that it has to be based in the central feature of your hypothetical. The feature would have to be important to Apple's reputation. These features don't come close. Apple never practiced by the district court into that. Correct, Your Honor. Apple never even practiced 721. There's no showing in this record that reputation was tied to these features. In another case, Your Honor, if you could show that reputation and goodwill were tied to the features, there might be a showing of irreparable harm to reputation. Does it matter that this is a two-player market with respect to reputation or harm? Your Honor, sometimes it might matter if there's a small market. In your Trebro case, for example, there were eight purchasers of patented sod harvesters in the world. For example, if you're talking about lost profits, any sale lost by one competitor is to the gain  So now if you're talking about reputational harm, then one infringement by one necessarily causes a reputational harm to the other. That might be, Your Honor, but that's not this market. In fact, you've already in the Broadcom versus Exusem case, you've already distinguished Apple Samsung. You said that's a market with lots of competitors. And one of the issues here is we're not a two-player market. Apple's never been able to show that sales would have gone to them rather than to other Android producers. I was going to say it was a two-player market with a lot of ponies and just a few points. I think that was my comment. Your Honor, let me try to summarize our position this way. We think that the record here is so profoundly devoid of evidence of causal nexus either to lost sales or to reputational injury that in this case the scope of the injunction can't cure the problem. The scope of the injunction can't cure the problem. It's something that you consider after you've shown the prerequisite, which is causal nexus to the injury. There was no showing of harm to reputation here and there was certainly no showing of any link between the infringement and the harm. Your Honor, maybe I could just point you to the key places in the record where any causal link to reputation is just foreclosed. Mr. Schiller admitted he was their key reputation and their head of technology admitted that he didn't know if any of the patented features were present in any iPhones. He also made generic observations and he talked about supposed copying in general. And then Mr. Schiller on Apple's behalf admitted that there was no reputational harm. At A10-530 he said the brand wasn't flipping. At A10-516 he said no, our brand was unaffected by the problems that Apple suffered didn't hurt the brand. And that led to a factual finding by the district court that Apple's reputation is robust. So, A15 again. So, Your Honor, it might be in another case. It's hard for me to think about it because if Chief Judge Prose's hypothetical is right, that the features were central to the patent, it's highly likely that they would be causally related to lost sales as well as reputational harm. But in this case, where there's no causal loss sales or reputational harm, with respect, you should affirm and the form of the patent should have no effect on the outcome. Thank you, Your Honor. In my three minutes, let me address three issues. One is Douglas Dynamics, the second is the license issue, and the third is the basis for the causal nexus ultimately, which I think will bring me back to your first question, Your Honor. On the licenses, let me just say this, and I wanted to be sure that I could say it on the public record. There is nothing in the record,  they're not licensed, to indicate that Google, Motorola, LG, Huawei, or Samsung are licensed. There are huge numbers of competitors who are not licensed and not licensed for a purpose. And then I would say that if you take that information, and the information that's before you, and compare it to the panel's decision at 1369 of Apple III, the results should be the same. Second, on Douglas Dynamics, in Judge Crowe's respect, I want to go to your hypothetical, because I think it's critically important, but I want to be precise first. When you ask what the District Court found on Douglas Dynamics, when you look at A14 to A15, she imposed the burden on us to show that the patented features drove demand for the products in order to invoke Douglas Dynamics. You will not find that in Douglas Dynamics at all. In fact, in Douglas Dynamics you can find three things, and this point is critically important. In Samsung's brief, they suggest you just what they argued today, that the patent covered the whole snow plow assembly. They refer you to the 700 patent. That's the wrong patent. That's the patent that had the claim construction issue before it. So the court has it covered precisely correctly, and this is important to understanding what the court did. The patent can issue on the injunction with the 978 patent, and that's why when the panel got to the injunction, it said, we see that the it's a multi-component product, and the patent only covers a portion. And in fact, your honor, if you look at the 978 patent, which is the right patent to look at, the invention was the latch that latched the snow plow to the assembly to the larger vehicle. That was the invention. There was nothing required in Douglas Dynamics to show that that latch drove demand for snow plow assemblies. Now, you may say, why? Is it just that they didn't recognize causal nexus? Well, your honor, two points. If you go back, you will see that during the briefing, the question of multi-component products was raised, and even on the hearing briefing, Apple II was raised. The reason it wasn't raised this, it was, as you said in Apple III, Douglas Dynamics is different. It is premised in the exclusivity. It's premised in what happens when you lose your exclusivity. And it's forward-looking. If someone can take your invention that has been adjudicated to... Your honor, and to correct Ms. Sullivan, we filed the... I don't care whether it was on time or not on time. Nonsense matters to me. She has said that we're entitled to an ongoing royalty, but she's deferred the amount until after the marriage appeal. And you're arguing, I assume, correctly, that a hypothetical bargaining position would have changed post-verdict such that the compulsory license should clearly be larger than what the pre-verdict rate would have been. She actually hasn't got to that issue yet. You're arguing, I assume... We haven't had to argue yet, Your Honor, because she hasn't... You will, I hope, argue that... Well, the honest answer is I'm hoping I don't have to. The answer, if we do, we'll address it then. There is, I mean... You're admittedly going to have to address it, because even if we put an injunction in play, don't you have sales between the date of the verdict and the day of the injunction? And they are. I don't know where this... We're not infringing any patent. They're infringing the 647 patent today. This is Word Games. It's the particular product that has the 647 feature in. It's not offered anymore. New products with different names with the 647 feature on the market today. But that's... Douglas Dynamics is basically predicated in exclusivity. And that's why I know so far unsuccessfully when I say competing against your own invention in a competitor's product is irreparable harm. That's part of what Douglas Dynamics is based in. If... Any other final thoughts? Yeah. If the causal nexus requirement is as specific as the district court articulated, which is you have to tie the patent features to the product, Douglas Dynamics could never have come out the way it did. It came out the way it did because... There's no indication that there was an argument made, at least before the panel. There's no indication of the court's reading the opinion, and I think I looked at the brief, that causal nexus was an argument that was raised and debated, right? Your Honor, I would say two things. The question of it being a multi-component invention and the invention only covering a portion was raised in the panel, and it explicitly mentioned that. And then on the rehearing petition, Apple II was specifically brought to court. Thank you. I thank all counsel on the cases submitted. That concludes our proceedings for this morning. All rise.